# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
### APPELLATE DIVISION

JOSE NUNEZ )
)  D.C. Crim. App. No. 2005-104
    *Appellant,* )
) Super. Ct. Crim. No. F3/2004
v. )
)
GOVERNMENT OF THE VIRGIN ISLANDS )
)
    *Appellee.* )
_____ )

2010 JUL 28 PM 4: 44
RECEIVED
CLERK OF THE
DISTRICT COURT
ST. THOMAS

On Appeal from the Superior Court of the Virgin Islands,
the Honorable Ive Arlington Swan presiding.

**Considered: February 20, 2009**
**Filed: July 28, 2010**

**BEFORE: CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the
Virgin Islands; and **JULIO A. BRADY**, Judge of the Superior Court,
Division of St. Croix, sitting by designation.

ATTORNEYS:

**A. Jennings Stone, Esq.**
St. Thomas, U.S.V.I.
    *For the Appellant,*

**Matthew Phelan, AAG**
St. Thomas, U.S.V.I.
    *For the Appellee.*

## MEMORANDUM OPINION

**PER CURIAM,**

Appellant Jose Nunez ("Nunez") appeals his conviction in the Superior Court of the Virgin Islands for first degree rape and first degree assault with intent to commit rape. For the reasons stated below, the Court will vacate Nunez's conviction and sentence for assault with intent to commit rape.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Dania Mercedes ("Mercedes") and Jose Nunez ("Nunez")both lived in a group house. Mercedes claimed that, in the early morning hours of December 14, 2003, Nunez knocked on the door to her room, and pushed his way inside, carrying a 10 inch knife. Nunez then demanded that Mercedes remove her clothes, forced her onto her bed, and raped her. Nunez was arrested a few hours later.

The Virgin Islands Government ("Government") charged Nunez in an Amended Information with four criminal violations. Count I of the information charged Nunez with first degree rape, in violation of V.I. CODE ANN. tit 14, §§ 1700(a) and 1701(2). Count II charged first degree assault with intent to commit rape, in violation of V.I. CODE ANN. tit. 14, § 295(3). Count III charged carrying or using a weapon, in violation of V.I. CODE ANN. tit. 14, § 2251(a)(2). Count IV charged third degree assault, in violation of V.I. CODE ANN. tit. 14, § 297(2).

During a three-day trial the Government presented testimony
that while Nunez originally said he did not do anything to
Mercedes, he later said that they had a consensual, sexual
relationship.  At trial, Nunez testified that he and Mercedes had
engaged in consensual sex on December 14, 2003, and that she only
accused him of rape because Nunez refused to give her money.

The Government argued that Nunez had changed his account
after his sister, Lorensa Torres ("Torres"), visited him in jail.
On direct examination, Torres testified that during her trip to
the police station, where Nunez was in custody, Nunez had only
cried and asked for help.  Torres said that she had been unable
to speak to Nunez.  During Torres' cross examination, the trial
judge engaged in dialogue with the prosecutor in front of the
jury, questioning the decision to cross examine the witness.  The
defense did not object.

The trial ended on March 3, 2005, and the jury began to
deliberate.  The jury thereafter sent the judge two notes
indicating that the jurors wanted clarification of the charges.
The judge told counsel of his intent to do no more than re-read
the elements of the charged crimes.  Neither the Government nor
the defense objected to this approach.  The judge thereafter re-
read the elements of all four crimes to the jury.

After hearing the elements again, the jury convicted Nunez

of Counts I and II, first degree rape, and first degree assault
with intent to rape. Nunez was acquitted of Counts III and IV,
carrying or using a deadly weapon, and third degree assault.

On March 14, 2005, defense counsel filed a motion for a
judgment of acquittal, or in the alternative, for a new trial.
That motion was denied on May 17, 2005. On May 18, 2005, Nunez
was sentenced to 25 years in prison for the rape conviction and
10 years for the assault conviction, with the terms to be served
concurrently. Nunez filed a timely appeal.

Nunez raises seven issues for review by this Court: (1)
whether the trial court erred by failing to order the Government
to choose between counts I and II in the charging document, (2)
whether the court erred by failing to offer a lesser-included
offense instruction on first degree assault with intent to commit
rape, (3) whether the trial court's comments about the cross
examination of defense witness Torres warranted reversal, (4)
whether the court's handling of the Government's misstatement of
the evidence during closing argument was error, (5) whether the
trial court's curative instruction regarding the Government's
misstatement of the evidence was sufficient, (6) whether the
trial court erred by allowing the Government to present its
rebuttal argument the day after the defense's closing argument,
and (7) whether the trial court insufficiently corrected the

jury's lack of comprehension of the court's instructions.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit. 4, § 33 (2006); 48 U.S.C. § 1614(a) (2006).

### B. Standard of Review

#### 1. Multiplicity

Where an appellant raises a multiplicity challenge to an indictment for the first time on appeal, this Court reviews this issue for plain error. *United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006) (citing *United States v. Couch*, 291 F.3d 251, 252-253 (3d Cir. 2002)). "Under this standard there must be (1) an 'error' that is (2) 'plain' and (3) that 'affect[s] substantial rights.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 731-732 (1993)). An error is one that affects substantial rights if it affects the outcome of the trial. *Id.* (citing *United States v. Evans*, 155 F.3d 245, 251 (3d Cir. 1998)). "If a plain error is found that affects the appellant's substantial rights, 'an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation

of judicial proceedings.'" *Id.* (quoting *Johnson v. United States*,

520 U.S. 461, 467 (1997)(brackets in original)).

### 2. Trial Court's Comment Regarding Defense Witness

The standard of review this Court applies to a challenge

based on a trial judge's comments asks whether the commentary

interfered with the defendant's right to due process.

> The task of an appellate court asked to review a
> trial judge's conduct is . . . a difficult one. We
> approach this case cautiously, aware that no
> absolute, rigid rule exists. Each case must be
> viewed in its own setting. The pattern of due
> process is picked out of the facts and
> circumstances of each case. . . . We must
> determine whether [the judge's] conduct was so
> prejudicial as to deprive [the] defendant [] of a
> fair, as opposed to a perfect, trial.

*United States v. Beaty*, 722 F.2d 1090, 1093 (3d Cir. 1983).

Nonetheless, a defendant can be deprived of a fair trial "and

judicial conduct [is] improper — whenever a judge appears biased,

even if he actually is not biased." *Gov't of the V.I. v.*

*Williams*, No. 08-3521, 2010 U.S. App. LEXIS 5532, at *2 (3d Cir.

Mar. 17, 2010) (unpublished) (citing *In re Antar*, 71 F.3d 97, 101

(3d Cir. 1995)).

As such, this Court must determine if Nunez was unable to

receive a fair trial because of the judge's commentary. *See id.*

### 3. Prosecutor's Remarks during Closing

A reviewing court must first decide if the comments a

defendant objects to on review were improper. *United States v. Stephens*, 571 F.3d 401, 408 (5th Cir. June 10, 2009) ("First, we assess whether the prosecutor made an improper remark." (quotation and citation omitted)). If a court determines the comment was proper, there is nothing more to review. If a court decides the comment was improper, it applies harmless error review. "The harmless error doctrine requires that the court consider an error in light of the record as a whole, but the standard of review depends on whether the error was constitutional or non-constitutional. . . ." *United States v. Gambone*, 314 F.3d 163, 177 (3d Cir. 2003) (en banc) (citing *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996)).

The distinction between constitutional and non-constitutional error is that constitutional error impacts the trial in a manner that raises doubts about the fairness of the trial. *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002) ("Improper conduct only becomes constitutional error when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). Further,

> non-constitutional error is harmless when it is highly probable that the error did not contribute to the judgment. . . . High probability requires that the court possess a sure conviction that the error did not

> prejudice the defendant. . . . . If the error was
> constitutional, the court may affirm only if the error
> is harmless beyond a reasonable doubt.

*Gambone*, 314 F.3d at 177-78 (3d Cir. 2003) (citing *United States
v. Molina-Guevara*, 96 F.3d at 703 (quotations omitted)).

### 4. Allowing Rebuttal on a Subsequent Day

The timing of closing arguments is a matter of trial
management, and thus is reviewed under the abuse of discretion
standard. *See Moore v. Morton*, 255 F.3d 95, 105 (3d Cir. 2001)
("The conduct of the trial, including closing arguments, is
regulated under the sound discretion of the trial judge."
(citation omitted)). "An abuse of discretion arises only when
the decision 'rests upon a clearly erroneous finding of fact, an
errant conclusion of law or an improper application of law to
fact.'" *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)
(quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir.
2000)).

### 5. Sufficiency of Explanation of the Charges

A judge's response to juror confusion, and the decision of
what further instruction to give, is within the sound discretion
of the trial court. *Cf. United States v. Hoffecker*, 530 F.3d
137, 166 (3d Cir. 2008) (stating that review is plenary for
instructions stating the applicable law incorrectly, but in the
absence of legal misstatement, the review is for abuse of

discretion). As such, so long as the law was not explained

incorrectly, a decision regarding how to instruct the jury "will

be reviewed only for an abuse of discretion." *United States v.*

*Ellis*, 156 F.3d 493, 498 n. 7 (3d Cir. 1998)(citation omitted).

### III. ANALYSIS

#### A. Multiplicity

The Superior Court sentenced Nunez to 25 years in prison for

the first degree rape conviction, and 10 years in prison for the

first degree assault conviction, to run concurrently.

Nunez argues that the trial court erred by sentencing him on

multiple convictions for a single offense. The Government

concedes that assault with intent to commit rape, proscribed in

V.I. CODE ANN. tit. 14, § 295(3), is a lesser included offense of

first degree rape, proscribed in V.I. CODE ANN. tit. 14, §1701(2).

Nunez did not object to the indictment on the basis of

multiplicity before trial. However, when a defendant fails to

raise a claim of multiplicity before trial, he waives the claim

only with respect to error in the indictment. He does not waive

the claim with respect to error affecting substantive rights,

such as sentencing. *See, e.g., Gov't of the V.I. v. Brathwaite*,

782 F.2d 399, 406 (3d Cir. 1986)("multiple punishments [for the

same offense] are impermissible"); *Gov't of the V.I. v. Dowling*,

633 F.2d 660, 670 (3d Cir. 1980).

In assessing whether the prohibition on multiple punishments applies, this Court is guided by the test enunciated in *Blockburger v. United States*, 284 U.S. 299 (1932). *United States v. Hodge*, 211 F.3d 74, 78 (3d Cir. 2000). This Court must ask whether the two statutes under which Nunez was convicted each require "proof of a fact which the other does not." *See Blockburger*, 284 U.S. at 304; *see also Brathwaite*, 782 F.2d at 406 ("*Blockburger* provides established test for determining whether two offenses are sufficiently distinguishable to permit imposition of cumulative punishment")(quoting *Brown v. Ohio*, 432 U.S. 161 (1977)). Under the elements test adopted by the Supreme Court "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." *Schmuck v. United States*, 489 U.S. 705, 716 (1989)(discussing Fed. R. Crim. P. 31(c)).

The elements of first degree rape[1] are (1) the use of force or fear, and (2) sexual intercourse or sodomy. *See Garcia v. Virgin Islands*, 48 V.I. 530, 542 (D.V.I. App. Div. 2006). The

---

[1] Nunez was convicted under V.I. CODE ANN. tit. 14, § 1701(2), which provides, in relevant part:

Rape in the first degree[.] Whoever perpetrates an act of sexual intercourse or sodomy with a person . . .
    (2) when the person's resistance is forcibly overcome . . .
    is guilty of rape in the first degree and shall be imprisoned not less than 10 years nor more than 30 years.

elements of assault with intent to commit rape[2] are:

> (1) that the defendant made an assault upon the complainant; and
> (2) that he did so with specific intent to have intercourse With the complainant; and
> (3) that he intended to achieve penetration of the complainant's sexual organs against her will and by using such force or threat of force as might be necessary to overcome resistance or make further resistance useless.

*Gov't of the Virgin Islands v. Greenidge*, 600 F.2d 437, 439 (3d Cir. 1979).

The only fact that the Government needs to prove to convict under the rape statute that it need not prove under the assault statute is sexual intercourse. As such, the Court agrees with Nunez, the Government, and a host of other courts that assault with intent to commit rape is a lesser-included offense of the crime of rape. *See, e.g.*, *Greenidge*, 600 F.2d at 440 (finding assault with intent to commit rape is a lesser-included offense of rape); *United States v. Stone*, 472 F.2d 909, 915 (5th Cir. 1973)(same); *Godlock v. Ross*, 259 F. Supp 659, 662 (E.D.N.C.

---

[2] The assault statute provides, in relevant part:
Assault in the first degree[.] Whoever . . .
(3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another--
shall be imprisoned not more than 15 years.

V.I. CODE ANN. tit. 14, § 295(3). While the assault statute under which Nunez was charged does not define assault, it is defined in other sections of the Virgin Islands code. Assault is defined as attempting to use "any unlawful violence upon the person of another with intent to injure him," or making "a threatening gesture showing in itself an immediate intention coupled with an ability to" use unlawful violence. V.I. CODE ANN. tit. 14, §§ 291, 292.

1966)(same); *see also Delaney v. Gladden*, 397 F.2d 17, 19 (9th
Cir. 1968)(finding assault with intent to commit rape is
identical to attempted rape).

Having found that Nunez essentially was twice convicted of
the same crime, the Court must address the appropriate remedy for
that error. Faced with similar circumstances, the U.S. Court of
Appeals for the Third Circuit has concluded that "'the only
remedy consistent with Congressional intent is for the [trial
court], where the sentencing responsibility resides, to exercise
its discretion to vacate one of the underlying convictions.'"
*United States v. Cesare*, 581 F.3d 206, 209 (3d Cir. 2009).
Accordingly, this court will remand with instructions for the
Superior Court to vacate the conviction and sentence for the
lesser-included offense of assault with intent to commit rape.
*See, e.g., id.* (having determined that defendant was
impermissibly punished twice for the same offense, remanding to
the district court with instructions to vacate the conviction for
the lesser included offense).

B.   **Trial court's commentary**

"'[N]o person [may] be deprived of his interests in the
absence of a proceeding in which he may present his case with
assurance that the arbiter is not predisposed to find against
him.'" *Gov't of the V.I. v. Williams*, No. 08-3521, 2010 U.S. App.

LEXIS 5532, at *2 (3d Cir. Mar. 17, 2010) (unpublished) (quoting

*Wang v. Attorney General*, 423 F.3d 260, 269 (3d Cir. 2005)). "It

is well-established that the conduct of a trial judge must be

measured by a standard of fairness and impartiality." *Greener v.*

*Green*, 460 F.2d 1279, 1280 (3d Cir. 1972) (quotation omitted)).

> [I]n order to reverse on grounds of excessive judicial
> intervention, the record must either "disclose actual
> bias on the part of the trial judge (or) leave the
> reviewing court with an abiding impression that the
> judge's remarks and questioning of witnesses projected
> to the jury an appearance of advocacy or partiality.
> This Court must view each case on its particular facts
> and circumstances in resolving allegations of denial of
> rights as contended here."

*United States v. Wilensky*, 757 F.2d 594, 598 (3d Cir.

1985)(quoting *Warner v. Transamerica Insurance Co.*, 739 F.2d

1347, 1351 (8th Cir. 1984)). "Although a few isolated, allegedly

prejudicial comments by the trial judge are not sufficient to

warrant a reversal, a balancing process must be employed to

determine whether the trial judge's comments have pervaded the

overall fairness of the proceeding." *Id*. at 598 (quoting *United*

*States v. Bland*, 697 F.2d 262, 265 (8th Cir. 1983)).

In *United States v. Olgin*, the United States Court of

Appeals for the Third Circuit outlined a sliding scale approach

to assess the propriety of a trial judge's comments in front of a

jury. 745 F.2d 263 (3d Cir. 1984). The court explained that

"[t]here is no bright line separating remarks that are

appropriate from remarks that may unduly influence a jury." *Id.*

at 268. This "sliding scale" approach requires a balancing of

the following four factors: (1) the materiality of the comment,

(2) its emphatic or overbearing nature, (3) the efficacy of any

curative instruction, and (4) the prejudicial effect of the

comment in light of the jury instruction as a whole. *Id.* at 268-

69. Finally, the court must balance these factors to determine

whether the judge's comments warrant reversal:

> The stronger the potential prejudicial effect of a
> statement is, the stronger must be the mitigating
> factors. There may be cases in which the trial
> judge's comments are so out of bounds that no
> cautionary instruction to the jury could remove
> their prejudicial effect. . . . [Where] a court
> has expressed its opinion on a pivotal issue in
> the case, and has expressed that opinion in a
> strong, unequivocal and one-sided fashion,
> abstract instructions regarding the jury's role as
> fact finder are not a sufficient remedy. . . . In
> cases in which the prejudicial effect of a
> judicial comment is not so egregious as to be
> uncorrectable, the appellate court must weigh the
> totality of the factors in determining whether the
> quantum of harm from a statement amounts to
> reversible error.

*Id.* at 269-70.

In this case, Nunez called his sister, Lorensa Torres

("Torres"), as a witness. Torres testified that she received a

call informing her that Nunez was being detained. Torres said

she immediately flew from St. Croix to St. Thomas. When she

arrived at the police station, Torres said she saw her brother,

but was unable to have a conversation with him. She said her

brother was cold, without a shirt, and crying, asking her to help

him. Torres testified that she helped Nunez up off of the floor,

and helped him put on a shirt, but did not converse with him

because shortly thereafter, the police indicated they were taking

Nunez away.

On cross examination, the Government asked a series of

questions. When Torres gave more than a yes or no answer, the

Government asked that she be instructed to answer with a simple

yes or no. The trial judge then interjected his opinion of the

Government's cross examination:

> THE COURT: I would instruct her; I will do that,
> but for the love of me, Attorney, did
> you hear what he had asked her on
> direct?
>
> ATTORNEY SMITH: Yes, Judge.
>
> THE COURT: And based on what he said and her
> response you are going to cross examine
> her? Go right ahead.
>
> Q. And so you never spoke to your brother?
>
> A. Absolutely not.
>
> ATTORNEY SMITH: No further questions.
>
> THE COURT: Attorney, I could never understand why
> you think you had to cross examine this
> witness.
> His sister? Of course, she's going to
> fly over on the next thing smoking to
> St. Thomas.

ATTORNEY SMITH: But the reason--

ATTORNEY WATLINGTON: Your Honor, I object to any testimony from the-

THE COURT:     Hold on. This is his sibling. What do you expect?

ATTORNEY SMITH: It wasn't whether she came but that --

ATTORNEY WATLINGTON: Objection to any -

          . . .

THE COURT:     Attorney, don't say anything. You are not going to have the last word. I'm telling you that you had absolutely-- there was nothing that you could have gotten from this witness having to do with your case.
      Because a witness takes the witness stand, don't mean that you are entitled to cross examine, but sometimes if you don't have a purpose for cross examination, don't do it.

ATTORNEY SMITH: There was a purpose, Judge.

THE COURT:     What ever the purpose was, it's negligible. You dodged the bullet that she did not say a couple of things that might have hurt your case.

(Tr. 155-58).

Nunez argues that the trial court expressed the opinion that Torres was not telling the truth by saying, "[t]his is his sibling. What do you expect?" While the comment, taken alone, could have meant that a sister would normally lie on behalf of her brother, in context it seems to mean something entirely different. Following the judge's comment that Torres immediately

flew from St. Croix to St. Thomas, the comment seems to mean that one would expect one sibling to quickly come to the aid of another in an urgent situation. Given the context, the jury was likely given the impression that the trial court was arguing that Torres reaction was perfectly normal, not that she was being untruthful.

Applying the first *Olgin* factor, Torres' cross examination was not central to Nunez's defense. Nunez argues that the trial court implied Torres should not be believed with the judge's statement to counsel that "there was nothing that you could have gotten from this witness having to do with your case." However, the comment does not seem to reflect that the court was impugning Torres' credibility. The comment seems to be admonishing counsel for wasting time cross examining a witness. While the comments of the trial court were inappropriate, they did not express a strong opinion on a pivotal point in the case.

Second, while the court's commentary was emphatic, it was unlikely to have given the jury the impression that it had to make a finding for either party. Instead, it may have given the impression that counsel for the Government did not know when to cross examine a witness.

Even if the trial judge's comment is interpreted as commenting on Torres' credibility, it was not as emphatic or

overbearing as other judicial commentary on credibility that has

warranted reversal. *See, e.g. Quercia v. United States*, 289 U.S.

466, 468 (U.S. 1933) (finding trial court comment that "'wiping'

one's hands while testifying was 'almost always an indication of

lying'" constituted reversible error). At worst, the comment can

be construed as "a statement that questions the validity of an

assertion, but does not flatly or emphatically dismiss the

testimony, [which] is of less concern." *Olgin*, 745 F.2d 263, 269

(citing *United States v. Blair*, 456 F.2d at 514, 519 (3d Cir.

1972); *Gaines*, 450 F.2d 186, 188-89 (3d Cir. 1971)).

With regard to the third factor, Nunez has not indicated

whether or not the trial court gave a curative instruction about

this colloquy. The Court finds that the comments would not have

caused a reasonable juror to question Torres' veracity, and as

such, they were not prejudicial to Nunez's defense.

## D. Prosecutorial Misconduct and Curative Instruction

Nunez argues that a statement the Government made during its

closing argument constituted prosecutorial misconduct. Counsel

for the Government argued that a vaginal swab taken from Mercedes

contained blood. The jury had heard testimony regarding lab

tests done on material taken from Mercedes' mouth, vagina and

underwear. There was testimony that the vaginal swab indicated

the possible presence of blood, but that the test did not provide

a clear positive result:

> Q. What were his findings regarding the Serology
> Examination in that report, Ms. Losquadro?
>
> A. The findings state in this report are that semen
> was identified on those vaginal swabs and panties
> submitted from Ms. Mercedes; that the oral swabs
> and smears were examined for the presence of
> semen; however, no semen was observed or detected
> and that we do chemical test which is a
> preliminary screening test which may indicate the
> possible presence of blood. That test was
> positive on the vaginal swab from Ms. Mercedes.
> The panties and oral swabs were examined for the
> presence of blood and none was detected.

(Tr. 120.) During closing argument, counsel for the

Government referred to the presence of blood on the vaginal

swab twice:

> Attorney Smith: . . . when you look at these
> reports, you'll see those FBI reports we marked,
> ladies and gentleman. Those particular report are
> Numbers 9 and 10. When you look at those records
> it will tell you, ladies and gentlemen, that not
> only was semen present on that vaginal swab that
> is Q4, but also the presence of blood, Ladies and
> Gentlemen.
> So we don't have to just rely on [examining
> doctor] Villaneuva. Maybe she saw redness and it
> wasn't really blood, so if you're mistaken or if
> you need a little bit more, the blood was on the
> vaginal swab, the same one that Villaneuva used to
> detect that the semen on the vaginal swab had DNA
> that belonged to one person in this courtroom . .
> . .

(Tr. 291.) Defense counsel objected that the prosecutor had

mischaracterized the evidence, and both attorneys and the

trial court engaged in extended colloquy on the issue,

outside of the presence of the jury. The Court read a

report which had been admitted into evidence, saying "'[a]

chemical test for the possible presence of blood was

positive on specimens Q3 and 4. . . . However, the presence

of blood was not confirmed.'" (Tr. 300-01.) The government

asked the court to review the testimony of the witness used

to authenticate the evidence, and the court agreed.

The next morning, the court and counsel reviewed the

testimony of Agent Losquadro. Then the court gave a

curative instruction to the jury:

> THE COURT: . . . both sides gave closing arguments
> last night and certain things were said and there
> was some objections made and I wanted to check the
> record. I had certain things read back to me to
> make sure before I did any ruling of any kind on
> anything; however, there was one thing that was
> said. Your recollection will control, but my
> recollection is that Attorney Smith made certain
> comments about the existence or whether there was
> blood on the vaginal swabs.
> What the Attorney say is not evidence. What
> you have here is Government Exhibit Number 9 that
> has been admitted in evidence and this is evidence
> which you will have when you retire to deliberate.
> On Page 2 of that Exhibit 9, the bottom there
> is a sentence, which I will read to you. It says,
> and I quote, "[a] chemical test for the possible
> presence of blood was positive on Specimens Q3 and
> Q4; however, the presence of blood was not
> confirmed."
> You will have that piece of evidence when you
> retire to deliberate as to whether or not anything
> concerning the blood and the swab, for the
> existence of it or whether it existed or not. You
> will have that Exhibit Number 9 and of course,
> it's 3 pages and you will read it for yourself.

> That is evidence. Any statements made by lawyers,
> those statements are never evidence.

(Tr. 6-8, Supp. Appx. 47-49.)

The determination this Court must make is if the
prosecutor's statements were improper. *Stephens*, 571 F.3d
at 408. ("First, we assess whether the prosecutor made an
improper remark." (quotation and citation omitted)). In
this context, propriety can be measured by reference to the
Codes of Professional Conduct. *Id.* at 8. One such code
provides: "'The prosecutor may argue all reasonable
inferences from evidence in the record. It is unprofessional
conduct for the prosecutor intentionally to misstate the
evidence or mislead the jury as to the inferences it may
draw.'" *Id.* at 8 n. 5 (quoting the American Bar Association
Standards for Criminal Justice 3-5.8 (2d ed. 1980)). Given
this standard, the prosecutor's misstatements were improper
in that they referred to a conclusion based on evidence that
was inconclusive.

Once a court determines the comment was improper, it
must determine if it was constitutional error, that is if it
impacted the trial in a manner that raises doubts about the
fairness of the trial. *Marshall*, 307 F.3d at 67 ("Improper
conduct only becomes constitutional error when the impact of
the misconduct is to distract the trier of fact and thus

raise doubts as to the fairness of the trial." (citation omitted)). The prosecutor's comments did not rise to the level of constitutional error because she drew an inference from inconclusive evidence, only spoke about that inference briefly, and there was other evidence that Mercedes had sustained injuries.

Accordingly, Nunez's conviction will be vacated if "the prosecutor's remarks, taken in the context of the trial as a whole, were sufficiently prejudicial to have deprived [the defendant of his] right to a fair trial." *United States v. Retos*, 25 F.3d 1220, 1224 (3d Cir. 1994) (alteration in original; citation omitted); *see also United States v. Irizarry*, 341 F.3d 273, 306 (3d Cir. 2003) ("In determining whether a prosecutor's [statement] denied the defendant a fair trial, 'it is important as an initial matter to place the remark in context' of the entire trial.") (quoting *Greer v. Miller*, 483 U.S. 756, 766 (1987)).

Given that this was non-constitutional error, the Court must determine if it is "highly probable that the error did not contribute to the judgment," that is, whether the court has a "sure conviction" that the error did not prejudice Nunez. *See Gambone*, 314 F.3d at 177.

The Third Circuit has articulated a three-part test to

determine whether improper comments prejudiced the
defendant: "the scope of the comments within the context of
the entire trial, the effect of any curative instructions
given, and the strength of the evidence against the
defendant." *Gambone*, 314 F.3d at 179-80 (citations omitted).
"Even if a prosecutor does make an offending statement, the
[trial] court can neutralize any prejudicial effect by
carefully instructing the jury 'to treat the arguments of
counsel as devoid of evidentiary content.'" *Id.* (quoting
*United States v. Somers*, 496 F.2d 723, 738 (3d Cir. 1974)).

First, with regard to the scope of the Government's
statement, in this case, the Court notes that the
misstatement was made twice during closing argument.
However, the references to blood on the vaginal swab were
not extensive, they were made in quick succession, were made
only during closing argument, and do not appear to have been
made at any other time. Therefore, while the misstatement
might have gained impact by being repeated, the Government
quickly moved on to another subject, and as such the first
factor shows the comments were only slightly prejudicial.

Second, despite Nunez's attack on the curative
instruction, this Court finds that it was an instruction of
both substantial scope and impact. The trial court read to

the jury the piece of evidence from which the government had

drawn its inference of the existence of blood. The trial

court further explicitly instructed the jury to read the

report, and admonished the jurors that the attorney's

argument was not evidence. The curative instruction was

likely quite effective at rectifying any prejudice to Nunez,

and this factor weighs in favor of the Government.

Third, with regard to the strength of the evidence

against Nunez, the Court finds that there were other facts

in evidence which would have supported the same conclusions

as the existence of blood on the vaginal swab. The

Government referred to the existence of blood in order to

argue that Nunez had used force during intercourse with

Mercedes. The doctor who examined Mercedes testified that

there was a laceration on her labia majora, and that there

were several lesions and bruises on her cervix. The doctor

testified that these injuries were the result of trauma, or

the use of force. As such, evidence of blood on the vaginal

swabs was not necessary for the jury to conclude that Nunez

had used force in having intercourse with Mercedes. The

fact that the evidence was cumulative supports the

Government. *See United States v. Rivas*, 479 F.3d 259, 267

(3d Cir. 2007) (noting that "[a] mistrial is not required

where improper remarks were harmless, considering . . . the

strength of the evidence supporting the conviction");

*Gambone*, 314 F.3d at 179-80 (finding that because the weight

of the evidence against the defendant was strong, any error

resulting from the prosecutor's improper statements was

harmless); *Zehrbach*, 47 F.3d at 1267 ("the extensive

evidence of [the defendants'] intent to defraud supports our

conclusion that the prosecutor's remarks would not have

prejudiced the jury's deliberations").

In sum, the Court finds that the first factor supports

Nunez's argument, while the second and third support the

Government.  In assessing the statement in the context of

the entire trial, the Court has a "sure conviction" that the

error did not prejudice Nunez. *See, e.g.*, *Gambone*, 314 F.3d

at 177, 180 (finding that where two of the three prejudice

factors weighed in favor of the Government, the defendants

were not entitled to a new trial, despite the lack of any

curative instruction).

### E. Rebuttal Argument Timing

The trial court heard closing arguments of the

Government and the defense, and allowed the Government to

rebut on the following morning.  While Nunez frames his

objection to this decision in terms of a denial of a right

to counsel, it is really an objection based on the court's
management of the trial. Nunez argues that because the
right to counsel attaches at critical stages, and because
closing arguments have been viewed as a critical stage,
allowing the Government to rebut a day after other closing
arguments denied him the right to counsel. However, the
support Nunez cites for this proposition is inapposite. In
*Hunter v. Moore*, the judge did not provide any opportunity
for closing arguments following a bench trial. 304 F.3d
1066, 1067 (11th Cir. 2002). The reviewing court held that
such a circumstance resulted in a constructive denial of the
right to counsel. *Id.* at 1071-72.

In contrast, the trial court here allowed closing
argument, it simply allowed the Government's rebuttal to
take place on the morning after the defense's closing
argument. As such, this Court declines to find that the
trial court's decision to postpone the Government's rebuttal
until the following day was an abuse of discretion.

### F. Trial Court's Steps to Cure Juror Confusion

Nunez argues that when the jury sent two notes to the
judge that read "Jurors need a clearer understanding of the
charges," and "Judge, we need a clearer understanding of the
charges," the trial court did not take the steps necessary

to cure their confusion.

In response to the notes, the judge told counsel that he could not give the jurors a better understanding of the Information, but that he could re-read the elements of the crimes charged. Both counsel for the Government and for Nunez agreed to that approach.

The jury was called back in, and the judge told the jurors that he was reluctant to explain anything in the Information other than repeating the names of the four crimes with which Nunez was charged. After the judge listed the four crimes, juror number nine asked the judge to re-read the elements of the crimes, and the judge did so for each.

"When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-613 (1946). However, "[a] jury instruction does not constitute reversible error if the instruction 'fairly and adequately' presents the issues in the case without confusing or misleading the jury." *Ellis*, 156 F.3d 493, 498 n. 7 (3d Cir. 1998) (citing *United States v. Simon*, 995 F.2d 1236, 1243 n. 11 (3d Cir.1993)). "Although the trial Judge is allowed a wide measure of discretion in shaping a particular charge a

misleading instruction is reversible error. . . . It is also long settled that an instruction must fairly set forth all of the essential elements of the crime charged." *Gov't of Virgin Islands v. Carmona*, 422 F.2d 95, 99 (3d Cir. 1970)(citations omitted).

In this case, one of the jurors asked for the court to repeat the elements of the charges. The judge did so. The elements of the charges were clear and correct, and they accurately represented the issues the jurors had to decide. As such, this Court finds that the trial court's response to the jury's request for clarification was not an abuse of discretion.

## IV. CONCLUSION

For the reasons stated above, the Court will affirm Nunez's conviction and sentence for rape. The Court will remand this matter to the Superior Court with instructions to vacate Nunez's conviction and sentence for assault with intent to rape. An appropriate order follows.